also referred to in the papers as SNCC. Though I grew up in the 60s, SNCC has a very different connotation in meaning to me, so I was thrown a bit when I saw SNCC involved in this case. Good morning. May it please the Court, my name is Deborah Varmer and my co-counsel Jeffrey Van Volkenberg is at council table and we represent the appellates, Westminster American Insurance Company, who I'll refer to as Westminster, are Janice Reyes and Munoz, his wife, as assinees of Chester Abb and Wally Reyes. I'd like to reserve four minutes for rebuttal if that's appropriate with the Court. Thank you. The crux of this case is whether Altman, who's listed in the schedule of additional insureds in the Security National Insurance Company policy, and I'd like to refer to them as Security National, is an additional insured despite failing to meet the definition of who is an insured in the additional insured endorsement. It's our contention. The record below establishes that Mr. Argenis was an employee of Altman and Mr. Reyes was an employee of A.R. Marlin. So the crux of this is that the Court initially looked at the A.I. endorsement relative to Altman and then once that occurred, the Court said because Mr. Argenis was an employee of Altman, then as a result of that, the absolute employer's liability exclusion applies. The ELE would apply based upon A.M. Marlin being a contractor, a subcontractor of Altman, wouldn't it? And the Court applied it saying that the ELE applied because Altman, Mr. Argenis, or Argenis-Reyes, but we're going to refer to him as Argenis because they both have the same last name, that Argenis was an employee of Altman and therefore because Altman was listed in the schedule, and that's important, listed in the schedule of the A.I. endorsement, that therefore he was an employee of any insured and the ELE applied. By A.I. you mean the additional insured? I do. The additional insured endorsement. All right. It seems like the key question here is what do we make of this additional insured endorsement that's listed as page 270, I guess, of the record? So it's captioned who is an insured, but then it has some extent language, and we normally think of extent as dealing with scope of the policy, not as insured. So should we treat this as defining insured or should we treat the extent language as more like a scope or exclusion? Well, and candidly, that's what Judge Padova did, right? And I think it's critical to keep in mind that this case is here as a result of a motion to dismiss where all inferences should have been made in favor of the plaintiffs. But I'm presuming this is a legal matter of construction. I'm not sure what factual development is going to cast on the meaning of this. Well, there are some factual issues relative, at least in the record, noting what work was actually being done. And it really goes more to the Chester Ave issue, not this particular issue. But Judge Padova did specifically look at the issue of whether this went to the scope versus the coverage. And it's our contention that because of the way the law is in Pennsylvania and what the courts do in construing insurance policies, that you have to read all of the words and not just some of the words. And you can't stop at the comma. And in that regard, the interesting thing when we're talking about facts is that if you go into the record, and remember, again, this was a second amended complaint that had voluminous exhibits attached to it. One of those was an exhibit where Security National was looking at and evaluating whether Chester Ave was an additional insured under the A.M. Marlin policy. And in that one, they read the entire scope. They read the scope, the definition, and the scope to come up with there may be an additional insured if Chester Ave were performing work for A.M. Marlin. Yet when the court, and in the argument advanced by Security National relative to the employer's liability exclusion, they stopped at the comma. And so it's our contention that... How is discovery going to cast any further light? Why is this not a one way or the other on the legal interpretation of the policy? Well, I think if there were discovery, there would be issues relative to, again, more to the duty to defend with respect to Chester as to what they were doing on the balcony. If you recall, in Judge Padova's opinion, he specifically stated what they were doing, which was very different than what's in the record. The record is more expanded as to what they were actually doing on the balcony. And that's something that Security National used in order to basically say, you know, we have no duty to defend Chester Ave. Ultimately, that was kind of ancillary to their decision relative to the absolute employer's liability exclusion. I do think that if discovery were had, you would get some information about that and some more particular details about that. How would that change the analysis? Again, I think it would change the analysis relative to who was doing what work and to the Chester Ave. Isn't that a parallel evidence problem? Like, why would any of that? I mean, I guess you're right that there's a possibility that none of the work would fall within. It was done for an insured. But, you know, is that is that really the issue here? The issue is as to what was going on at this property. It was being done for A.M. Marlin, right? Correct. So then either they're being held liable for their acts and omissions. So either that makes them insured or it doesn't make them an insured. I don't understand. But remember, we're going back to the application of the ELE. And under the ELE, that's what the court used to exclude coverage and said that under the ELE, because Altman is any insured by the definition, then, therefore, there could not be coverage under the policy. But again. Under the parallel evidence rule, I mean, I see why this is going to be relevant to whether they were doing work at a site that was covered. But apart from that, is there any way in which any of the evidence about the meaning of the policy is going to change in discovery? Anything that would survive the parallel evidence? The only thing, if you remember, there's multiple counts in this complaint. And I would contend that, you know, because the court's ruling on the first issue, the main issue, ultimately resulted in the rulings on what we identified as second and third issues and dismissal of those allegations of the complaint. If, in fact, the analysis relative to the ELE exclusion is incorrect, then discovery would certainly be necessary and warranted relative to the inconsistent positions that they may have taken as it relates to the counts of the complaint that were also dismissed, which are the bad faith counts. So I certainly think that from that standpoint, there's additional information that would be necessary in that regard. That's the bad faith counts. Insofar as this case turns on the looming spectra of workman's compensation and the wording of the ELE, I'm going to say it's bad faith because it's legitimate. They may be wrong, but isn't it a legitimate position to take? I guess you're saying they still have a duty to defend. Well, certainly. And again, this court, although it's an unpublished opinion, if you recall, in Gallatin, this court did say that you can have bad faith in extremely rare circumstances. That is an unpublished opinion out of the Third Circuit. But the premise from the court as to why there wasn't bad faith is because there's no coverage, right? So if that's wrong, and if then you get into the issue of the inconsistent positions that may have been taken by Security National, then quite frankly, I think that you can establish bad faith. But were they inconsistent or were they corollary? Because you could say at one point rely upon reasons A for not extending coverage. At another point, you rely on B and maybe even C. That doesn't mean that A and B are necessarily inconsistent. They're just different or alternative claim positions that they took in denying coverage. Well, I think that they're inconsistent in the interpretation because you can't read the whole definition and apply the whole definition in one instance to say there's really no duty to Chester Ave. because they weren't performing work on the actual balcony that collapsed. And then say, but we're not going to read that entire definition over here. So we're going to read it here and say it relates to who's an additional insured and the definition. But we're not going to read it here because we're going to say that it goes to the scope. Now, the court, that's what Judge Padova did, and he said it relates to the scope and not the definition. And so basically our position is that because of the workers' comp and because of the inability of our genus to bring a claim because of the workers' comp immunity, and there are cases across the country, albeit not from Pennsylvania. Last night it occurred to me, I think I missed this, it turns out whether or not the underlying potential insured can be held liable. And your argument is, well, it can't be held liable because there's workman's compensation. But it seems to me that reads the word held out of the equation. If it was just an exclusion based upon whether or not they could be liable, that's a different situation. Because it seems to me that under workman's compensation, they're clearly not going to be held liable. They may be liable, and you can clearly argue, and I think you have, that under the workman's compensation scheme, they are still liable. It's just a strict liability because of the application of the way the statute and the insurance falls. But they're not held liable. And that word held, it seems to me, in the insurance contract is important. And it seems to me your argument, insofar at least as the ELE is concerned, asks us to read the word held out of the contract and just say to which they are liable. I see that my time is up, but may I respond to your question? I believe that it's important to read, and my argument is that you need to read all of the words. And if you recall, in that definition are also the words, but only to the extent. That they would be held liable. Yeah, only to the extent they're held liable. So our position is exactly what you stated, because they can't be under the compact. And if you look at the Romero case out of this court, Romero is an interesting case that basically says when you're dealing with the act, and you're dealing with coverage, you really have to take a look at it and look at the analysis of the act aspect of it. And so, yeah, our position is because they can't be held liable, then they can't be any insured and the ELE does not apply. So if you have no further questions, I'll tender to my counsel. Lastly, are we the appropriate court to decide this, or would this be a case we should certify to the Pennsylvania Supremes? I think that this court can decide it. And candidly, I think that one of the issues here, again, is if you look at most of the cases that have come down on coverage, they're all summary judgment cases, or most of them. This is pretty unique in the sense that it was a motion to dismiss, and I think that that's fairly significant. The language is pretty unusual. I mean, this doesn't look like this is going to be a recurring problem, does it? I think that there is held language in policies across the country. I do believe that to be true. I think the more unique aspect of it is the impact of the act. The act being the Witness Compact? Yes. Thank you very much. Good morning. Lou Bobet for Security National with me is Mark Sikin of my office at counsel table. Mr. Bobet, let me ask you what I asked your opposing counsel, Ms. Varner. One thing that bothers me here, this language, apparently standard industry language because we've seen cases from other jurisdictions where this comes up and the issue becomes the importance of the operation of the Workman's Compensation Scheme. Why not simply define what you mean by held liable with an eye toward clarifying whether or not the Workman's Compensation Scheme would exclude someone from being held liable? Well, I would answer that two ways. First, the workers, first of all, Altman is the employer here of the bodily injury claimant and is scheduled, insured under the AI endorsement that we've been addressing. First of all, they could be held liable. Section 303B, 7741B of the Workers' Compensation Act carves out an employer's immunity to repay another under, for example, a contractual indemnity obligation. We see that all the time. The famous case in Pennsylvania. But isn't there the liability arises by contract? Right. An employer can be held liable in Pennsylvania under the Workers' Compensation Act to repay another, in this instance, the property owner. But that would be the operation of the contract. That's right. And there was clearly a contract here between the owner and the property manager. The property manager was supposed to take care of this balcony and, you know, maybe did or maybe didn't. But it's irrelevant. The point is that held liable, certainly an employer can be held liable. There's a variety of reasons why. First, under Section 303B of the Act, there's a carve-out for indemnity obligations, the obligation to repay another. Second, they might. Do we have a covered indemnity here, though? Well, we have a property management agreement. And one would expect, had this case ever gone to suit, that the owner would be looking to the property manager to repay them, so to speak, for whatever loss. But does that contractual obligation exist here, the duty to indemnify? Yeah. In the record, the references to the property management agreement. Because they are marlin. No, no, I am marlin, the property manager, the employer here. I've just got to find it in my notes. But there's absolutely, I think it's the appellate record at 278. Hold on. I'm sorry, 289. The 28J letter. I don't want to take your time. 289. The appellate speaks in terms of the owner-property manager contract for the maintenance of the property. But back to your question. It speaks of, is there a specific contractual obligation to indemnify? Not that I'm aware of in this record. I don't have a property management agreement. I just know that it was averred, that one existed between the owner and the property manager. But then that contractual carve-out wouldn't apply here under the Workman's Compensation Act. It may or may not apply. The point here is, well, the overarching point here is the held liable language in the AI grant is just that. It goes to the scope of coverage. You don't have to have coverage under the policy to qualify as an insured. We see that every day. The most famous cases in Pennsylvania insurance jurisprudence that I deal with every day, Cabrner, for example, the famous no-occurrence case, they didn't have coverage because the court found that the scope of the insuring agreement didn't apply to the particular laws. Madison v. Harlisville, another famous case that I deal with virtually every day, it's a pollution exclusion case, notable. And in that case, Madison didn't have coverage because the pollution exclusion precluded a defense or an indemnity obligation under the policy. They didn't lose their status as an insured. Here, Security National specifically listed these folks as insured. To the extent that they could be held liable. As insured, but only to the extent, and that's the insuring grant. So one looks at the best place perhaps to start, and they referenced it, is the landmark case, and I consider it a landmark case in Romero because I've handled a number of it. Let's start with the text and then get to the cases to the extent that they're close. Sure, sure. The text of the AI grant. Looking at the AI grant, and when you look at the headings, they're boldface headings. There's a boldface, who isn't insured, that applies to the whole paragraph we're talking about here, and then there's a separate exclusion section. So call me simple, but it looks like that whole A paragraph is about defining insured, in which case, you know, then they're not insured if they're not held liable for acts of omission, you know, arising out of ongoing operations. Right. It's a two-step process. First, who qualifies as an insured is the first thing the court would look at, and they've done so in every AI case that this court has decided on. I have a list of them, and I can go over the identical language. All these AI endorsements are the same. They amend who is an insured. So the first question, the first step in the analysis is who qualifies as an AI. Typically, that's scheduled or could be triggered by a written contract. In other words, for example, in Romero, there was a written contract that required one party to name another as an additional insured, and instead of listing that party by name in the schedule, it just said as required by written contract. So that's what we call the trigger. First, you have to qualify as an insured under the AI endorsement. Then you get to what's the scope of that coverage. It's not as broad as the general liability grant that one would find in coverage A of a CG00014. Right, but the way it's phrased is who is an insured, it appears that, you know, since they're not held liable for acts or omissions arising out of ongoing operations performed for that insured, then it wouldn't qualify. And so it does seem like Judge Podoba didn't approach the case this way. Because the way to address and the way the courts have addressed this language throughout the country and in this circuit and in Pennsylvania is two steps. First, who might qualify as an additional insured? And then what is the scope of coverage? And from that scope of coverage clause, which follows the comma, if you will, only to the extent the person is liable, held liable. In this case, sometimes it says only for their acts or omissions that are causal to the law. I didn't find any of the cases cited by others to be too close. Columbia River Rentals is sort of close, but that's a duty to defend case. Let's look at Romero, if I could, Judge. In that case, and I quote, the endorsement provided Section 2, who is an insured, is amended. And it went on to say, quote, such person or organization is an additional insured only with respect to liability for bodily injury, property damage, or personal and advertising injury caused in whole or in part by your acts or omissions and so on and so forth. So in Romero, what the court did is first they figured out, well, who might qualify as an additional insured? And they looked to the contracts because the trigger in that endorsement was where required by written contract. So they went to the contract. They looked for a provision in it, what we call an insurance procurement provision. They found it. Once they did that, they said, okay, this entity, Romero, qualifies as an additional insured. Now let's see what the scope of that AI coverage is. And they went through an analysis again, and it's very famous. The four corners, they looked at the four corners of the underlying pleading, and they concluded even though the employer wasn't named in that underlying pleading, the allegations were such that you could read into it the possibility that the employer's acts or omissions were causal to the loss. Hence, Romero found a duty to defend, even in the absence of a suit against the employer. But duty to defend cases are different. And, you know, Columbia River Rental is a duty to defend case that cuts the other way. You have authorities that go both ways. What I haven't heard either of you discuss in your briefs is contra preferentum. You know, if your client drafted this policy and it's ambiguous, don't we hold it against your client? Well, it's not ambiguous with all due respect. But if it is ambiguous, you agree your client drafted this policy. Absolutely. And you agree that if there were an ambiguity, we'd conscript against you. You have to argue there's no ambiguity. There is no ambiguity here. It defines who is an insured. But one need look at no further than the schedule where these folks are listed. Or, if the court wanted to, you could go to Altman's own counsel's words. And you'll find them at the appellate record 316 to 317, where counsel for Altman, our Genesis employer, and I quote, writing to Security National prior to the pre-suit mediation, As you are aware, Altman is a named additional insured under the SNIC Security National policy issued to A.M. Marlin. We have requested coverage under this policy. So that's Altman's lawyer saying, hey, Altman's an additional insured named under your policy. We have Security National naming Altman as an additional insured. And then we have a limitation on the coverage afforded Altman, the held liable clause that you're speaking of. But when you would talk about contra preferendum, one of the more fundamental aspects of this case, and I was thinking about it last night as I prepared for this. Keep in mind, this is a single policyholder policy. A.M. Marlin bought it. They're a contractor. They went to the trouble of amending the employer liability exclusion to apply to any insured's employee. Now, why would they do that if there was only one insured, A.M. Marlin? They did it because they knew they were going to have a slew of additional insureds listed on the A.I. endorsement. And they didn't want to cover claims by employees of any insured. So to read into Altman's not an insured because it hasn't been held liable would render the whole process of amending the employer's liability exclusion, it would read it out of the policy. But more to the point, I guess if you wanted to look at this as that held liable clause, which, again, this court has not always looked at it as a scope of the insuring agreement, not who qualifies as an insured. You wouldn't know who is an insured until after the case is over. That can't be the law. The law is we look at this A.I. insuring agreement. We find out who might qualify as an A.I., either by schedule or by written contract or other defining parameter. Then we look at the scope of the coverage afforded and we determine whether there's a potential for indemnity. And that's how the duty to defend is decided. And that's what this court did in Romero. Let me just give you one other quick example. Quincy Mutual versus Imperium, 636 Federal Appendix 602. It's a Third Circuit case from 2016. Right. So in that case, they did the same two-step analysis. They looked at the A.I. endorsement, which was triggered by a written contract, and they looked in the contract for some insurance procurement requirement. They couldn't find one, and the analysis stopped there. They never got to the scope of the A.I. coverage under the endorsement. The famous case of Dale, okay, it's a district court case, but it's cited everywhere. The Supreme Court of New York in Burlington followed it. Dale, and Romero did, too, in large part. So in Dale, the district court, again, they did a two-step analysis. Let's see who might qualify as an additional insured, and then what is the scope of the additional insured insuring grant. And this is really a side issue. What matters here is that Altman, an employer of a bodily injury claimant, is scheduled as an additional insured under this policy. The analysis stops there because the employer's liability exclusion isn't dependent on whether Altman is held liable or even if it has coverage for this particular claim. What matters is their status as an insured, and they're clearly an insured because they were listed as such, their lawyer characterized them as such, and Security National repeatedly characterized all the folks listed in the schedule as insureds. They just quarreled with whether, at least initially, whether there was coverage for them, again, under the held liable insuring clause. Going back to the dead penises question, I know your position is there is no ambiguity. Right. So sure about that. So let's assume that we disagree with you on that. And that goes back to my question to you. It's a standard language. It's given rise to similar kinds of issues in multiple cases. Why not just define what you mean by that language? I know you're saying that it's evident what it is. Judge, ISO is the one that drafts these forms, and then the insurance industry, of course, uses them. You're 100% right, or whichever, I forget which judge mentioned it. Every one of these additional insured endorsements has a paragraph that says Section 2, who is an insured as amended, and then it goes on to say. First, it usually references the schedule. And it never changes. Every one of them says it. And Dale said it, it had the same clause. Romero had the same insuring clause in the AI grant. Quincy, all of these cases have the same who is an insured as amended clause. The wisdom there is we're saying who is an insured, and we're referencing the schedule and whatever defining parameter there may be. In this case, it was listed. They're named. And then after the comma, they speak in terms of what is the nature of the insuring grant we're providing to this additional insured. So the reason they amend the who is an insured provision in this manner is they say, look, you're an additional insured if you qualify. And then the only coverage you're going to have is X, Y, or Z. In Romero, it was caused in whole or in part by your acts or omissions. The same thing with Dale. In this case, it's when you're held liable. But, again, I come full circle back to if one were to say, well, you can't be an insured until you're held liable, you would never have a duty to defend. And all of these cases, you say, well, this isn't a duty to defend case. You're right. It's not a duty to defend Altman because the employer's liability exclusion isn't dependent on whether Altman has coverage for this claim. What matters is Altman's scheduled as an additional insured, and that's really the end of the analysis. Any questions? Thank you. Thank you. If I just may make a few brief comments. In response to the question relative to the property management agreement, in the record, there is no property management agreement. And so specifically, when we talked earlier about what would be necessary in discovery if the position of Security National is going to be that there is a carveout under the act, then that's certainly a reason why it would not have been appropriate to dismiss this case on a motion to dismiss, which, again, It does seem more appropriate for, even if they're right, it does seem more appropriate for a summary judgment motion. Well, candidly, I agree with the Court there because, quite frankly, there are issues. And with the inferences that should have been made on behalf of the plaintiffs, it does appear that the Court did not really take that into consideration and infer those in favor of the plaintiff in the light most favorable. And as I stated earlier, most of the cases that are dealing with the coverage issue are summary judgment cases after discovery has been held. Now, I'd like to go back to the issue of, obviously, why we're here and who is the insured. And if you look at the endorsement, I understand Mr. Beauvais and, quite frankly, Judge Padova's position that because they're listed in the schedule and it be our position that that makes them a potential insured. Because if you're not listed, you're not anything, right? But if you don't meet the remainder of the definition, and maybe it's inartfully worded, but as Judge Beavis said, if that's the case, then that's securities issue, not Westminster and certainly not the remainder of the plaintiffs. So I'd ask the Court to consider our position and vacate the order, reverse the order of Judge Padova, and send it back. Thank you. Can we just see counsel for a second? Can we come on up? Come on up, me? Can we go off the record for a minute? We can go off the record.